Joseph REED, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 14–98–01134–CR, 14–98–01135–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

March 2, 2000.

Michael E. Barrow, Thomas R. Steinmeyer, Houston, for appellant.

Kimberly Aperauch Stelter, Houston, for appellee.

Panel consists of Justices MAURICE E. AMIDEI, EDELMAN, and WITTIG.

## SUBSTITUTED MAJORITY OPINION

DON WITTIG, Justice.

The majority opinion issued in this case on January 13, 2000 is withdrawn and the following opinion is issued in its place.

This appeal concerns the degree of evidence of incompetency that necessitates a competency hearing by the trial judge.

Appellant, Joseph Reed, entered the Gucci Department of Saks Fifth Avenue, selected an aqua green mink fur coat, placed it in a Lord and Taylor bag, and attempted to leave without paying; he was charged with felony theft and possession of a controlled substance. Each indictment included two enhancement paragraphs that appellant had been convicted twice before of felony theft. Appellant pled guilty to the charges and true to the enhancements. The court assessed 20 years confinement for the theft offense and 35 years for possession of a controlled substance. Appellant presents four issues for review in this consolidated appeal: (1) the court erred in proceeding to the punishment phase when there was evidence in the record raising a bona fide doubt appellant was not competent to proceed to the sentencing phase of trial; (2) the court's failure to hold a competency hearing denied appellant due process; (3) the failure of either of appellant's two attorneys to request a competency hearing constituted ineffective assistance of counsel under the Sixth Amendment; and (4) ineffective assistance of counsel under Article 1, § 10 of the Texas Constitution. We affirm in part and reverse in part.

In his first and second issues, appellant contends the court erred in failing to conduct a competency hearing pursuant to TEX.CODE CRIM. PROC. ANN. Art. 46.02, § 2(b). We agree. The following strongly supports his claim the court had evidence before it to raise a bona fide doubt of his competency:

1. Appellant had seizures which he stated totally incapacitated him.

2. Appellant purportedly took prescription drug treatment for psychosis.

3. Appellant told the trial court he had a mental illness.

4. Appellant had memory loss.

5. Our independent review of the record indicates appellant had a stated

memory loss in the sentencing hearing at least 5 times.[1]

6. Appellant had no memory of the event for which he was to be punished.

7. Appellant suffered a head injury in 1993 and was received on going treatment with tegretol and dilantin.

8. Appellant had organic brain dysfunction (blood clot.)

9. The pre-sentence investigation report confirmed appellant's memory loss, seizures and numbness of the face.

10. The State, in written motion dated June 10, 1998, stated:

> "Now Comes The State of Texas, by and through its Assistant District Attorney ... and moves this Court to order that Harris County Forensic Psychiatric Services conduct a psychiatric examination to determine the defendant's present ***competency*** to stand trial" (emphasis in original).

11. In the motion, the State judicially admitted appellant suffered: a.) periods of unconsciousness; b.) loss of memory; and c.) was under continuous mental evaluation at a state hospital.[2] The effect of this judicial admission is estoppel to claim to the contrary on appeal.[3]

12. Contrary to the dissent and State's argument, the record shows appellant claimed his own defense counsel was *conspiring against him.* This hardly supports the conclusion "little, if any, of it (evidence) is probative of appellant's actual ability to consult with a lawyer or understand the proceedings against him . . . ."

13. Although the court ordered the evaluation, it was not done.

14. Appellant wrote the court several letters informing the court of his incompetency.[4]

15. After his plea, appellant filed motions dealing with a trial of the merits, which he had already waived. The State and dissent strain to imagine appellant understood the proceedings when he is talking about and filing pre-trial motions for a trial he will not get.

16. Appellant stated he had "no control" of himself.

17. Shortly after being taken into custody for the offense, appellant displayed potential signs of a seizure.

18. Appellant "blank[ed] out" during his incarceration for the offense.

---

1. a. He testified on cross he didn't know who stole the coat;
   b. Asked by the State another time about the offense, he stated he didn't recollect stealing the coat;
   c. He told the judge he couldn't remember things because he had blackouts;
   d. He told the judge he couldn't remember doing the offense;
   e. He stated to the judge, " . . . the plea that I took. . . . I didn't know what it was and what it consisted of because I didn't know and I'm asking for your mercy in the court today."

2. Specifically, the State asserted "Defendant has a history of periods of unconsciousness and subsequent loss of memory and is undergoing continuous mental evaluation at LBJ hospital [sic] and is currently scheduled for a CAT SCAN."

3. *See Davidson v. State,* 737 S.W.2d 942, 948 (Tex.App.-Amarillo 1987, pet. ref'd).

4. In them, he stated:
   a. "I've uncovered a conspiracy within my lawyer-client confidentiality and trustworthyness [sic];"
   b. He was "under mental drugs;"
   c. He was being treated for mental illness at H.C.H.D. (Harris County Hospital District);
   d. Though his "mental illness and drugs was is a big factor in his illness," he couldn't "understand why his lawyer would conspire with who ever to eliminate such treatment that would greatly do some good;"
   e. "Something is wrong and I'm affraid [sic] to step into that courtroom again;"
   f. "On June 10 th in open court, you ordered [my attorney] to assist me in getting everything I needed to prepare for court evidence hearing . . . a psychological evaluation for competency. . . ."

19. Appellant filed *pro se* motions for independent psychiatric evaluation and to offer insanity as a defense.

20. At his sentencing hearing, appellant stated he didn't know what his plea was.

21. The bizarre broad daylight escapade, taking a full length aqua green fur coat from Sak's and putting it in a Lord and Taylor bag might itself occasion some question of appellant's faculties.

## Discussion

Article 46.02 provides, in pertinent part:

§ 2. (b) If during the trial evidence of the defendant's incompetency is brought to the attention of the court from any source, the court must conduct a hearing out of the presence of the jury to determine whether or not there is evidence to support a finding of incompetence to stand trial.

■ Whether an issue of incompetency exists at trial is left to the discretion on the judge.[5] We therefore apply an abuse of discretion standard in deciding whether the court erred in not conducting a competency hearing prior to sentencing.[6] In determining whether evidence requires empaneling a separate jury to conduct a competency hearing, the trial court is to consider only the evidence tending to show incompetency, and not evidence showing competency, in order to find whether there is some evidence, a quantity more than none or a scintilla, that ra-

tionally could lead to a determination of incompetency.[7] The same standard is applied whether the issue of competency is presented pre-trial or during trial.[8] The trial court may rely on personal observations, known facts, evidence presented, motions, affidavits, or any other reasonable claim or credible source creating a bona fide doubt of the defendant's competency to stand trial.[9] Generally, a bona fide doubt about a defendant's legal competence is raised only if the evidence indicates recent severe mental illness, moderate mental retardation, or truly bizarre acts by the defendant.[10] The critical inquiry is whether the accused had the ability to consult with his attorney with a reasonable degree of rational understanding and had a rational as well as factual understanding of the proceedings against him.[11]

■ We begin by noting that any indicators or alternative explanations in the record that might have led the trial court to conclude appellant was competent are legally irrelevant. The proper standard of review of a section 2 hearing, as stated in *Casey v. State*,[12] is to view the trial court's decision "in the light most favorable to the party with the burden of securing the finding, *disregarding contrary evidence and inferences.*"[13]

In *Casey*, the court of criminal appeals held the trial court was required to conduct a section 2 hearing based solely on testimony the defendant in that case was presently suffering from amnesia.

**5.** *Thompson v. State*, 915 S.W.2d 897, 901 (Tex.App.-Houston [14th Dist.] 1996, pet ref'd); *Ainsworth v. State*, 493 S.W.2d 517, 521 (Tex.Crim.App.1973).

**6.** Sentencing is part of the trial and competency considerations apply. *See Casey v. State*, 924 S.W.2d 946, 949 (Tex.Crim.App. 1996).

**7.** *Sisco v. State*, 599 S.W.2d 607 (Tex.Crim. App.1980).

**8.** *Williams v. State*, 663 S.W.2d 832 (Tex. Crim.App.1984).

**9.** *Thompson*, 915 S.W.2d at 902.

**10.** *See Collier v. State*, 959 S.W.2d 621, 625 (Tex.Crim.App.1997).

**11.** *See Porter v. State*, 623 S.W.2d 374, 380 (Tex.Crim.App.1981).

**12.** 924 S.W.2d 946 (Tex.Crim.App.1996) (per curiam).

**13.** *Id.* at 948, n. 4 (emphasis in original).

In contrast, the record here shows time and time again the court was confronted with far greater evidence of incompetence from numerous sources: the appellant, his physician, his attorney, and the pre-sentence investigator. Time and again the evidence showed appellant was presently undergoing treatment for mental illness, was presently undergoing treatment for epilepsy, and was presently being treated for a traumatic brain injury. The effect of these maladies was to presently cause him to black out, presently cause him to lose his memory, presently cause him to go into seizures, and presently cause him to have problems remembering the offense. Appellant's being on anti-psychotic and anti-seizure medication provides additional evidence that he was both suffering from severe mental illness and that he was further impaired by the drugs themselves.

■ Additionally, the prosecutor and defense counsel jointly moved to have appellant examined for competency and sanity, citing appellant's periods of unconsciousness, loss of memory, and continuous mental evaluation. The court agreed and ordered Harris County Forensic Psychiatric Services to conduct a psychiatric examination and file it with the court and that the State provide the examination to appellant. It also ordered that if Harris County could not file the report, it was to advise the court. The record does not reflect any of this occurred. Now, despite its own joint motion, the State attempts to reverse its field, claiming no bona fide doubt as to appellant's competence existed.

The State is estopped from taking a position to the extent it is inconsistent with its motion in the trial court.[14]

Another independent ground raising a bona fide doubt of competence arises where the defendant commits "truly bizarre acts."[15] Here, the bizarre broad daylight episode, taking a full-length aqua green fur coat from Sak's and stuffing it in a Lord & Taylor bag might occasion a serious question of appellant's competence.[16]

■ The court was presented with significant evidence of appellant's incompetence many times from many sources. The evidence accumulated with no action taken by the trial court to inquire further of appellant's mental problems in the record, the numerous mental lapses stated in the court's very presence, the absence of psychiatric reports previously ordered, much less hold a preliminary hearing. To turn a blind eye to this mountain of evidence would be to rob the statute of any vitality or substance. The statute clearly provides "the court must conduct a hearing." In sum, there is significant evidence appellant was sentenced to 35 years without having "the ability to consult with his attorney with a reasonable degree of rational understanding" and without "a rational as well as factual understanding of the proceedings against him." We therefore find there was sufficient evidence before the court to have raised a bona fide doubt as to appellant's competency at his sentencing hearing.[17] Accordingly, the tri-

14. *Accord Prystash v. State,* 3 S.W.3d 522 (Tex.Crim.App.1999) (where a party by a request for a ruling leads a court into error, he should be precluded from claiming a reversal of the judgment by reason of the error so committed); *See Davidson,* 737 S.W.2d at 948.

15. *See Collier,* 959 S.W.2d at 625.

16. The dissent posits that appellant had an obvious desire to be found incompetent. When a baby cries for food, we feed it. And indeed appellant did cry out for a competency hearing. How callous and incredulous have

we become that our system of justice cannot take the time to determine if this man living on the margin needs mental evaluation? Indeed our holding is only that the trial court should have made inquiry,

17. The State cites *Gardner v. State,* 733 S.W.2d 195 (Tex.Crim.App.1987) and *Valdes–Fuerte v. State,* 892 S.W.2d 103 (Tex.App.-San Antonio 1994, no pet.) for the rule that a psychiatric examination ordered by a court does not alone establish an evidentiary issue on the defendant's competency to stand trial. While there is far more evidence in this rec-

al court abused its discretion by not conducting a hearing on appellant's competency.

We do not reach the issue of ineffective assistance of counsel because its determination is unnecessary to the resolution of this case.

We remand for the trial court for further proceedings consistent with this opinion. Because the issue of appellant's competency[18] was not raised at the time he plead guilty, the case is remanded for sentencing only.

RICHARD H. EDELMAN, Justice, substituted dissenting opinion.

The dissenting opinion issued in this case on January 13, 2000 is withdrawn, and the following opinion is issued in its place.

The issue in this case is whether the evidence was sufficient to create a *bona fide* doubt in the mind of the trial judge

whether the defendant met the test of legal competence at the time of his sentencing hearing. *See Moore v. State,* 999 S.W.2d 385, 393 (Tex.Crim.App.1999).[1] A person is incompetent to stand trial if he does not have: (1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against him. *See* TEX.CODE CRIM. PROC. ANN. art. 46.02, § 1(a) (Vernon 1979).

A defendant's mental impairment does not alone warrant a competency hearing where no evidence indicates that he is incapable of consulting with counsel or understanding the proceedings against him. *See Moore,* 999 S.W.2d at 395. It is therefore within the purview of the trial judge to distinguish evidence showing only impairment from that indicating incompetency as contemplated by the law. *See id.* at

ord raising the issue of appellant's competence, we will briefly address those cases.

We note that in *Gardner,* the issues were different. There, appellant did not appeal because the judge failed to conduct a section 2 hearing, but because one of the psychiatrists who examined him later gave damaging testimony at trial regarding future dangerousness that appellant had attempted to suppress.

In *Valdes–Fuerte, Johnson v. State,* 564 S.W.2d 707 (Tex.Crim.App.1977), and *Collier,* we note the trial courts in each case took the precaution of having a psychiatric expert examine the defendant and then report their findings to the court. In each case, at least one expert affirmatively reported the defendant was competent.

We recognize that evidence of competence is legally irrelevant in resolving the issue. However, the difficulty arises where the appellate court in each of these cases nonetheless weighs evidence of the defendant's competency in rendering its decision. This is most distinct in *Johnson,* where the court, in its analysis, stressed the reports of two psychiatrists who found the defendant was a "well-oriented individual." The *Johnson* court also observed the defendant "clearly understood the ramifications of this action." *Johnson,* 564 S.W.2d at 711. Even the dissent in the present case refers to appellant's letters and conversations with the court as evidence of his competence. Section 2 does not require or even allow a reviewing court to weigh

conflicting evidence of competence versus incompetence. Rather, the court is duty-bound to look at the record to determine whether there is evidence creating a bona fide doubt of competence. We distinguish the State's cases primarily because the quantum and quality of those defendants' incompetence do not reach the level here. But the cases are also distinguishable because they incorrectly weigh significant evidence of those defendants' competence into the equation. One could argue that the element of good faith might indeed include some weighing of evidence, evidence of competency versus evidence of incompetency. The argument however, is beyond the scope of this opinion.

**18.** A defendant is presumed competent to stand trial, absent evidence raising a bona fide doubt of such competency. *See* TEX.CODE CRIM. PROC. ANN. art. 46.02 § 1A(b)(Vernon 1999).

**1.** Where the issue is presented, a trial court is to determine whether there is some evidence that could rationally lead to a determination of incompetency, and, in doing so, may consider only evidence tending to show incompetency, not that showing competency. *See Moore,* 999 S.W.2d at 393. The standard is the same during pre-trial and trial. *See id.* On appeal, the standard of review is abuse of discretion. *See id.*

396.[2]

In this case, what evidence does the majority opinion rely on to create a *bona fide* doubt of appellant's ability to consult with his lawyer and understand the proceedings against him? First, there are appellant's own self-serving representations to the trial court that: he had seizures which he stated totally incapacitated him; he took prescription drug treatment for psychosis; he had a mental illness; he had a stated memory loss, including at least five times in the sentencing hearing; he had no memory of committing the offense; his defense counsel was conspiring against him; he was incompetent; he had no control of himself; and he didn't know what his plea was. Consistent with these representations, appellant also filed *pro se* motions for independent psychiatric evaluation and to offer insanity as a defense. Obviously, to the extent such actions warrant a competency hearing, few cases after this opinion issues will be conducted without one.

Second, there are indications of possible mental impairment: a head injury for which appellant was receiving prescription medication; "organic brain dysfunction (blood clot)"; appellant displaying potential signs of a seizure after being taken into custody; appellant allegedly blanking out during his incarceration; and the State's motion for psychiatric examination stating that appellant had a history of periods of unconsciousness and subsequent loss of memory, was undergoing continuous mental evaluations and examination, and was scheduled for a CATSCAN.[3]

Third, appellant displayed a lack of knowledge of criminal procedure by filing motions pertaining to a trial on the merits after he had entered his guilty plea. Last is the allegation that, in broad daylight, appellant stole a green fur coat from one store and put it in a shopping bag from a different store.[4]

Apart from reflecting possible mental impairment and a clear desire by appellant to be found incompetent, none of the "evidence" relied on by the majority indicates an inability by appellant to consult with a lawyer or understand the proceedings against him. Although the trial court had ordered Harris County Forensic Psychiatric Services to conduct a psychiatric evaluation and file a report on appellant's competency to stand trial, the briefs do not indicate why this order was not complied with, and appellant does not assign error to the trial court's failure to obtain such a report. Nevertheless, in the absence of any reliable evidence raising a *bona fide* doubt regarding appellant's competency, a meaningful determination of appellant's competency could not be made based on the "evidence" relied upon by the majority. Because the trial court's denial of a hearing to indulge in such a fruitless exercise was thus not an abuse of discretion, I would affirm the judgment of the trial court.

**2.** A trial judge's appointment of a disinterested expert is also dependent on a finding of evidence which raises the issue of appellant's incompetence. *See Collier v. State,* 959 S.W.2d 621, 625 (Tex.Crim.App.1997), *cert. denied,* 525 U.S. 929, 119 S.Ct. 335, 142 L.Ed.2d 276 (1998).

**3.** The majority opinion further states that the presentence investigation report ("PSI") "confirmed appellant's memory loss, seizures and numbness of the face." On the contrary, however, the PSI states "The defendant reports to suffer from periodic epileptic seizures, memory loss, and the left side of his face is numb. No medical proof was provided at the time of this report to confirm the defendant's claim."

**4.** Would the majority ascribe greater competency to appellant if he had instead *paid* for such a coat?