**Joseph REED, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 14–02–00457–CR, 14–02–00458–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 17, 2003.

---

22. *McKenna v. Austin,* 134 F.2d 659, 673 (D.C.Cir.1943) (Stephens, J., dissenting) (quoting Lord Eldon).

Belinda Johnson Chagnard, Houston, for appellants.

Alan Curry, Houston, for appellees.

Panel consists of Chief Justice BRISTER and Justices LESLIE BROCK YATES and EDELMAN.

## MAJORITY OPINION

LESLIE BROCK YATES, Justice.

Appellant, Joseph Reed, was indicted for the felony offenses of theft and possession of a controlled substance, enhanced with two prior convictions for felony theft. Appellant entered a plea of guilty to the charges and true to the enhancements. The trial court assessed punishment at 20 years' confinement for the theft offense and 35 years for the possession of a controlled substance. Appellant subsequently appealed, arguing there was sufficient evidence to require a competency inquiry prior to sentencing. *See Reed v. State,* 14 S.W.3d 438 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). A panel of this Court

agreed (with one justice dissenting) and remanded the case for a competency inquiry by the judge. *See id.* On remand, the trial court held an inquiry, found that appellant was competent to stand trial, and re-sentenced appellant. The trial court supplemented the record with a copy of a June 1998 psychiatric evaluation that found appellant was competent to stand trial, but which had not been included in the record of the original appeal. The trial court further noted that appellant refused to comply with the trial court's order to submit to a new evaluation. In this appeal, appellant argues the trial court committed reversible error in failing to conduct either a preliminary inquiry or a jury trial on appellant's competency. We affirm.

■ Article 46.02 of the Criminal Procedure Code governs a defendant's competency to stand trial. The five-step inquiry includes the following:

1) if a competency issue is raised by the defendant, any party, or the court; and

2) evidence of incompetency is brought to the attention of the trial court by the defendant, any party, or the court;

3) of the type to raise a bona fide doubt in the judge's mind regarding the defendant's competency to stand trial; then

4) the judge must conduct a Section 2 *competency inquiry* to determine if there is some evidence sufficient to support a finding of incompetence, and if there is,

5) the judge must impanel a jury for a Section 4 *competency hearing.*[1]

*McDaniel v. State,* 98 S.W.3d 704, 710–11 (Tex.Crim.App.2003) (emphasis added); *see* TEX.CODE CRIM. PROC. ANN. art 46.02 §§ 1–4 (Vernon 1979 & Supp.2003). Each requirement must be fulfilled before pro-

---

**1.** Prior cases interpreting article 46.02 use the words "inquiry" and "hearing" interchange-ably. For clarity, we note that Section 2 governs an *inquiry* and Section 4 a *hearing.*

ceeding to the next. *McDaniel*, 98 S.W.3d at 711.

In the earlier appeal, this Court listed numerous examples of evidence requiring the trial court to conduct a Section 2 inquiry. *See Reed*, 14 S.W.3d at 439–41. On remand, the trial judge held several hearings on the issue of appellant's competency and explained to appellant that in order for the court to re-sentence him, appellant needed to undergo a psychiatric evaluation. Appellant refused to submit to any examination. The trial judge found appellant competent and re-sentenced him.

Appellant now contends the trial court committed reversible error, because it did not conduct a competency inquiry or a jury trial on competency prior to re-sentencing him. As we have already indicated, a psychiatrist initially examined appellant and found him sane and competent. Following remand of the case, the trial court held several hearings in an attempt to convince appellant to be examined a second time. In a hearing conducted on April 25, 2002, the trial court stated that, contrary to this Court's first opinion, a competency inquiry *was conducted* prior to appellant's pleas of guilty and that the trial court determined that appellant was sane and competent. At the April 25 hearing, the trial court also stated that it was taking judicial notice of the clerk's file, including the prior competency report.[2] The competency report is attached as an exhibit to that hearing. The trial court further found "nothing contrary has been shown to the court" and, following re-sentencing, again found appellant sane and competent.

Based on the complete record before us, we conclude that the trial court conducted a competency inquiry. While part of the "inquiry" may have been conducted prior

to our original opinion, it is clear that the trial court considered the issue and made findings. Thus, although it was informal, a Section 2 inquiry did occur. *See Mata v. State*, 632 S.W.2d 355, 358–60 (Tex.Crim. App.1982) (holding that an informal hearing was sufficient). Accordingly, we overrule appellant's first issue.

■ Appellant also argues the trial court erred in not conducting a jury trial on the issue of competency to stand trial during the punishment phase of trial. Appellant contends, under the law of the case doctrine, that this court previously determined evidence existed raising the issue of appellant's incompetency, and as such, should not be revisited. *See Howlett v. State*, 994 S.W.2d 663, 666 (Tex.Crim.App. 1999).

■ Resolution of this appeal is not governed by the "law of the case" doctrine. In its most basic form, the doctrine provides

> that an appellate court's resolution of a question of law in a previous appeal of the same case will govern the disposition of the same issue when raised in a subsequent appeal. Law of the case is a court-made doctrine designed to promote judicial consistency and efficiency that eliminates the need for appellate courts to prepare opinions discussing previously resolved matters. The doctrine assures trial courts that they can rely on the appellate court's disposition of an issue in presiding over the case and provides an incentive for trial courts to follow these decisions closely.

*Id.* at 666 (footnote and citations omitted).

The problem with relying on the law of the case in this instance is two fold. As

---

2. We note that in addition to the competency report, the clerk's file also contains over 200 pages of medical records from the Texas Department of Criminal Justice. The trial judge requested these medical records, which contain mental health screenings and evaluations, and included them as part of the trial record.

discussed below, our prior opinion did not address whether appellant was entitled to a Section 4 competency hearing. *See Reed,* 14 S.W.3d at 442 n. 16 ("Indeed our holding is *only* that the trial court should have made an inquiry.") (emphasis added). Thus, because our prior opinion was addressing a different issue than that raised in appellant's second point of error, it cannot have been "previously resolved." In addition, as noted above, one rationale for the doctrine is to assure that trial courts can rely on the appellate courts' disposition of an issue and provide an incentive for them to follow the decisions closely. Here, the trial judge, in reliance on our prior opinion, and in an apparent attempt to follow the opinion closely, conducted a competency *inquiry.* To now hold, as the dissent would have us do, that the trial court should have also conducted a competency *hearing,* is contrary to the rationale for the doctrine.

 Furthermore, the twenty-one facts and circumstances which "strongly support[ ] [appellant's] claim [that] the court had evidence before it to raise a bona fide doubt of his competency [to stand trial]," do not support the conclusion that a Section 4 hearing was required. *See Reed,* 14 S.W.3d at 440–41. The standard for granting a Section 4 competency *hearing* differs from that requiring a Section 2 competency *inquiry.* A Section 2 competency inquiry is required if the evidence raises a bona fide doubt about a defendant's competency to stand trial. *McDaniel,* 98 S.W.3d at 710. Evidence showing "recent severe mental illness, at least moderate retardation, or truly bizarre acts by the defendant" is usually sufficient to create this doubt. *Id.* Evidence creating such a doubt "need not be sufficient to support a finding of incompetence and is *qualitatively different from such evidence." Mata,* 632 S.W.2d at 358

(emphasis added). At the inquiry, the defendant must produce evidence "sufficient to support a finding of incompetenc[y]" to require the trial court to hold a Section 4 competency hearing. *Id.; Alcott v. State,* 51 S.W.3d 596, 601 (Tex.Crim.App.2001).

Here, no evidence was introduced at the inquiry which would support a finding of legal incompetence. The 21 points outlined in our prior decision constitute the type of evidence that would require the trial court to hold a competency inquiry— which it did. They do not, however, constitute sufficient evidence to support a finding of legal incompetence.

 In determining whether there is sufficient evidence to conduct a competency hearing, the trial court is to consider only the evidence tending to show incompetency, and not evidence showing competency. *See Moore v. State,* 999 S.W.2d 385, 393 (Tex.Crim.App.1999), *cert. denied,* 530 U.S. 1216, 120 S.Ct. 2220, 147 L.Ed.2d 252 (2000). A trial court's decision whether to conduct a competency hearing is reviewed for abuse of discretion. *See id.*

 A person is incompetent to stand trial if he does not have: (1) sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against [him]. *See* TEX.CODE CRIM. PROC. ANN. art. 46.02, § 1A(a) (Vernon Supp.2003). Information necessary to sufficiently raise the issue of appellant's incompetency must be specific and illustrative of counsel's present inability to communicate with the defendant. *See Moore,* 999 S.W.2d at 394. It is not enough for counsel to allege unspecified difficulties in communicating with the defendant. *See id.* Evidence of mental impairment alone does not require a competency hearing where no evidence indicates that a defendant is incapable of consulting

with counsel or understanding the proceedings against him. *See id.* at 395. It is within the purview of the trial judge to distinguish evidence showing only impairment from that indicating incompetency as contemplated by the law. *See id.* at 396.

Appellant and the dissent claim the 21 points outlined in our prior opinion satisfy this standard. Even if it were appropriate for us to consider the "pre-inquiry" evidence in determining whether a Section 4 hearing was required, we note that of the 21 points listed, only four[3] arguably relate to appellant's ability to understand the proceedings against him and to communicate with his lawyer. The 17 other pieces of evidence relate to appellant's head injury and mental impairment, but as previously stated, that alone does not constitute evidence of legal incompetency.

Two of the points, 15 and 19, state that appellant filed motions with the trial court. Appellant filed a pro se motion requesting a psychiatric evaluation, as well as other pre-trial motions, although he had already waived a trial on the merits. *Reed,* 14 S.W.3d at 440–41. Rather than demonstrating incompetency, we conclude that such behavior demonstrates appellant's understanding of the legal process and his ability to function within it. In addition, appellant filed numerous other proper motions with the trial court and orally demonstrated a comprehension of the law by citing to statutes.

The following two points, 12 and 20, are the only items which possibly indicate appellant's inability to communicate with his lawyer or to understand the proceedings: (12) appellant claimed his defense counsel was conspiring against him and (20) at the sentencing hearing, appellant did not know what his plea had previously been. *Id.* at 440–41.

■ Conflicts with defense counsel do not necessarily constitute incompetency. The record shows that appellant had at least three different trial lawyers, and he requested two be dismissed for ineffective assistance. During the original proceedings, appellant filed two pro se motions to dismiss his first attorneys, Ronald N. Hayes and Samuel Knight. In a letter to the trial court, appellant claimed Knight was conspiring against him. After the case was remanded, appellant had an additional court-appointed attorney about whom he orally complained to the trial court. He made no mention of a conspiracy, but rather argued that counsel was inadequately representing him. In each instance, appellant comprehended the necessary procedure for having court-appointed counsel removed. He filed motions, wrote a lucid and complete letter to the judge, and complained in court. This behavior is not indicative of an incompetent defendant, but rather one who does not like his appointed counsel. Distrust of attorneys and a general failure to cooperate are not probative of competence to stand trial. *Burks v. State,* 792 S.W.2d 835, 840 (Tex.App.-Houston [1st Dist.] 1990, pet. ref'd). "If such actions were

---

**3.** The four points from our prior decision that we consider relevant to this inquiry are:

 12. Contrary to the dissent and State's argument, the record shows appellant claimed his own defense counsel was conspiring against him.

 15. After his plea, appellant filed motions dealing with a trial of the merits, which he had already waived.

 19. Appellant filed pro se motions for independent psychiatric evaluation and to offer insanity as a defense.

 20. At his sentencing hearing, appellant stated he didn't know what his plea was. *Reed,* 14 S.W.3d at 440–41.

probative of incompetence, one could effectively avoid criminal justice through immature behavior." *Id.*

As to appellant's understanding of his plea, he admitted at the Section 2 inquiry that he knew he had pled guilty. He had a lengthy discussion with the court regarding whether the indictment properly reflected the weight of the seized cocaine. Although appellant claimed in the same discussion that he did not know what he had pled guilty to, it appears from the record that appellant was fully aware of what he had been charged with and his plea.

In conclusion, because no evidence was adduced at the Section 2 inquiry that would support a finding of legal incompetence, the trial court did not abuse its discretion in failing to conduct a Section 4 hearing on this issue.

The judgment of the trial court is affirmed.

BRISTER, C.J., dissenting.

SCOTT BRISTER, Chief Justice dissenting.

Two years ago, a panel of this Court (1) found "a mountain of evidence" raised a bona fide doubt as to appellant's competency, and (2) the trial judge should have conducted a competency hearing (or "inquiry" as the majority describes), but did not. *See Reed v. State,* 14 S.W.3d 438, 442–43 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). A different panel now finds (1) the mountain is merely a scintilla, and thus no evidence of incompetency, and (2) a competency inquiry was conducted, though none appears in our record. Right or wrong, I would insist that the lower court follow our previous opinion. Because the Court does not, I respectfully dissent.

### The Competency Inquiry

In his first point, appellant argues the trial judge failed to conduct a competency inquiry. *See* TEX.CODE.CRIM. PROC. art 46.02 § 2(b). On the record before us, I agree.

The trial judge read our opinion to require a new psychological evaluation, and held several hearings trying to convince appellant to cooperate. He refused:

*May 17, 2001 hearing*

[Court:] I want to visit with you a little bit about where we are in the process.... Now before we can do the punishment hearing we need to—because the Court of Appeals has ordered me to do it—they want me to have you psyched whether you like it or anybody else likes it, they have ordered me to have a new psychiatric evaluation.... If you don't talk, cooperate and do the psychiatric evaluation, you sit in jail. But if you want the process to go forward then you have to be evaluated. If you don't want the process to go forward, you want to sit in jail till hell freezes over, then you can do that, too.

[Appellant:] I will take my chance. I will sit in jail, Judge Ellis.

*July 20, 2001 hearing*

[Court:] Nothing happens in your case and we are going to keep doing this month after month until you change your mind and until you get examined.

[Appellant:] The Court of Appeals said it was remanding the case back for re-sentencing; it didn't say anything about another psychiatric evaluation test again.

\* \* \*

[Court:] I do know one thing that nothing will happen until you talk to the doctor.

[Appellant:] Okay. I can't make that decision.

[Court:] We will see you next month.

*October 31, 2001 hearing*

[Court:] The Court of Appeals having reversed the case only on punishment with the admonishment that we get Mr. Reed psyched to make sure he is sane and competent to participate in the punishment phase of the trial. I have lost count. This is probably the third or fourth time we've done this. Mr. Reed has persistently refused to cooperate with any psych examination and so we're here again to try try again.

\* \* \*

Mr. Reed, I don't know how else to explain this. It's as simple as it could possibly be. Unless and until you talk with the doctor of the Forensic Unit of the Harris County Health and Mental Retardation Authority at the Forensic Unit in the jail, unless and until that happens, nothing happens to your case . . . So, I mean we've had this discussion three or four times at least. We are in the same position we were in the first time we had this discussion, which is nothing happens until you cooperate with the Forensic Unit. . . . Are you going to cooperate with the Forensic Unit or not?

[Appellant:] I can't answer that question.

The only subject at each of these hearings was whether appellant would submit to a new evaluation. The trial judge never asked appellant or the State if either had evidence to offer on his competency. And none was—no witnesses were called, no exhibits admitted. No one asked about appellant's mental condition, or his ability to communicate with his attorneys. There is almost no mention of the 21 items described in this Court's opinion as "a mountain of evidence" suggesting incompetency. *See Reed,* 14 S.W.3d at 442.

It is not clear that a competency inquiry can be (or should be) "informal." *See McDaniel v. State,* 98 S.W.3d 704, 713 (Tex.Crim.App.2003) (holding trial court did not err "in failing to hold a *formal* competency inquiry") (emphasis added).[1] In *Mata v. State,* the Court of Criminal Appeals noted a competency inquiry "was not as formal as it ideally might have been," but affirmed because the trial judge at least asked both the defense attorney and the defendant about the latter's educational level, history of mental illnesses, and understanding of the charges and the proceedings. 632 S.W.2d 355, 360 (Tex. Crim.App.1982). No one asked those questions here.

Instead, all we have is a series of hearings in which the trial judge pleaded with appellant to submit to a new psychological evaluation, and he stubbornly refused. The trial judge finally gave up, conducted a new punishment hearing, and resentenced appellant to the same punishment as before. There was no competency inquiry.

The majority holds a competency inquiry occurred piecemeal sometime during the last five years, perhaps before our previous opinion (though we reversed because the record showed none) and perhaps after it when the trial judge took judicial notice of the court's files (now including a competency opinion from 1998). But leafing through out-of-date records in the court's file is not a competency inquiry,

---

**1.** The *McDaniel* court also indicated inadmissible evidence could trigger an inquiry, but did not suggest such evidence could be used at the inquiry itself. *Id.* at 710 n. 19.

informal or otherwise. Nor can the trial judge set aside our previous opinion on his own say-so:

*April 25, 2002 hearing*

> [Court:] For reasons that I don't understand, that report did not make it into the file until November 19th of 1998, which apparently what happened was that the Court was aware that he had been evaluated sane and competent but it didn't make it into the record for purposes of appeal. So, the fact— for you guys and gals at the Court of Appeals, Mr. Reed was found sane and competent before the plea, before the hearing on punishment, was sane and competent at the time of the punishment hearing that we had in the first place. So, all your anger and distress at this Court for not considering the mental competency of Mr. Reed at the time we did the original plea is, I take it, a mistake because you did not have the report.

Perhaps the trial judge is correct that our previous opinion would have been different if the 1998 competency report had been included in the record. But we must judge appeals on the record before us. And once we do, trial judges are not at liberty to ignore us.

We remanded for a competency hearing, but none occurred. The trial judge properly tried to get appellant to submit to a new evaluation; when he refused, the trial judge should have proceeded without one. Because he did not, I respectfully dissent.

### The Competency Hearing

In his second point, appellant argues the trial judge failed to conduct a competency trial. *See* TEX.CODE.CRIM. PROC. art 46.02 § 4(a). Again, on the record before us, I agree.

Because no competency inquiry took place, it is hard to say what evidence was before the trial judge. As he also presided over appellant's first trial, he undoubtedly was aware of the evidence that—according to our first opinion—should have raised bona fide doubts of competency in his mind. Whatever the evidence is, we must view it in appellant's favor, and disregard contrary evidence and inferences. *See Reed*, 14 S.W.3d at 441.

In our previous opinion, we listed 21 items that "strongly" supported appellant's claim of incompetency, including a previous head injury, prescription drug treatment for psychosis, periods of unconsciousness, frequent loss of memory, seizures, complaints about his attorneys conspiring against him, and the "bizarre" crime alleged—stealing a full-length aqua-green fur coat from a Sak's department store in broad daylight. *See Reed*, 14 S.W.3d at 439–41.

The Court finds most of these items irrelevant because they do not relate to appellant's ability to understand the proceedings or communicate with his attorney. But we do not know that—the record of appellant's first trial (from which the earlier panel gathered these facts) is not before us now. Perhaps appellant's seizures occurred long before trial, or perhaps they occurred while he was on the witness stand. Because we cannot tell, we cannot assume them away.

The Court also finds evidence of appellant's competency from his exchanges with the trial judge. But if there was some evidence of incompetency, these conversations cannot be considered. *See Grider v. State*, 69 S.W.3d 681, 685 (Tex.App.-Texarkana 2002, no pet.) (suggesting trial court improperly considered defendant's arguments at hearings); *see also Moore v. State*, 999 S.W.2d 385, 393 (Tex.Crim.App. 1999) (holding trial court may only consid-

er evidence tending to show incompetency, and must disregard evidence of competency). For the same reason, appellant's psychological evaluation from four years earlier, and his refusal to submit to a new one, had to be disregarded to the extent they might be considered evidence of competency.

The Court correctly notes that evidence justifying a competency inquiry does not necessarily justify a competency trial. But it is not too much to expect a trial judge to at least ask about the evidence that justified the inquiry. No one did here.

A trial court must empanel a jury to decide competency if there is some evidence at the preliminary hearing to support a finding of incompetency. *See* TEX. CODE.CRIM. PROC. art 46.02 § 4(a); *Pipkin v. State*, 997 S.W.2d 710, 712 (Tex. App–Houston [14th Dist.] 1999, pet. ref'd). Nothing in this record suggests why the evidence detailed in our previous opinion— filling more than three pages in the Southwestern Reporter—is no longer evidence. Accordingly, assuming what occurred below was a competency inquiry, a competency trial was required.

### Conclusion

I concede that a fair reading of the record after remand suggests appellant is not so much incompetent as incorrigible. As criminal defendants may feign incompetence to avoid facing a jury, we should not allow a mountain to be made out of a molehill. But neither should we make a molehill out of what we previously declared a mountain, absent extraordinary circumstances that require overruling our earlier decision. *See Howlett v. State*, 994 S.W.2d 663, 666 (Tex.Crim.App.1999) (stating exception to law-of-the-case doctrine in exceptional circumstances, as when previous opinion was clearly erroneous); *O'Connor v. First Court of Appeals*, 837 S.W.2d

94, 96 (Tex.1992) (holding panel decision constitutes decision of whole court of appeals unless reheard en banc). There are no extraordinary circumstances here. Accordingly, I respectfully dissent.